



FILED

JAN 2 3 2014

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

'14 MJ 0251

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:_____ |
| Plaintiff, | |
| v. | C O M P L A I N T |
| RAHELEH ZIAEI (aka "Rachel Amin")(1), and SAHAF AMIN GHOLAMREZA (aka "Reza Amin")(2), | Title 21 U.S.C. 841(a)(1), Possession of A Controlled With Intent To Distribute. |
| Defendant. | |

The undersigned complainant duly sworn states:

<u>COUNT 1</u>

On November 1, 2012, within the Southern District of California, defendants

RAHELEH ZIAEI (aka "Rachel Amin"), and SAHAF AMIN GHOLAMREZA (aka "Reza

Amin"), did knowingly and intentionally possess with intent to distribute opium, a

Schedule I controlled substance in violation of Title 21 United States Code, Sections

841(a)(1.

And the complainant states that this complaint is based on the attached Probable
Cause Statement, which is incorporated herein by reference.

_____
PAUL GELLES, Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me
this _____ day of January 2014.


_____
WILLIAM V. GALLO
United States Magistrate Judge

# A F F I D A V I T

I, Paul Gelles, being duly sworn, declare and state:

## I.   TRAINING AND BACKGROUND OF THE AFFIANT

1.     I am an investigator and law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878, who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Titles 18 and 21, United States Code.

2.     I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 1999, and am currently assigned to the DEA San Diego Field Division Narcotics Task Force ("NTF").   Prior to my assignment to the NTF, I was assigned to the Bogotá Colombia Country Office Anti-Money Laundering Unit.   Before employment with the DEA, I was a Patrol Agent with the United States Border Patrol (USBP) for approximately two years.   I have received specialized law enforcement training from the Federal Law Enforcement Training Center, Charleston, South Carolina.   I have received specialized narcotics law enforcement training at the Federal Bureau of Investigation/Drug Enforcement Administration Academy, Quantico, Virginia.   I

have also received specialized training in the interdiction of narcotics and narcotic proceeds through airports, hotels, trains, and parcels.  During my employment with DEA, I have participated in the surveillance and arrest of numerous drug traffickers.  I have debriefed numerous persons arrested for controlled substance trafficking and have debriefed and directed confidential informants in gathering controlled substance intelligence.   Also, I have spoken with experienced narcotics investigators concerning the methods and practices of narcotics traffickers. Through my experience and training and my conversations with other investigators, I have also become familiar with the manner in which controlled substances are imported, manufactured, distributed and sold.  I have become familiar with the efforts of persons engaged in the importation, smuggling, manufacturing, distribution and sales of controlled substances to avoid detection and apprehension by law enforcement officers.  I am also familiar with the manner in which narcotics traffickers use telephone, cellular telephone technology, pagers, coded communications, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

3.     The information contained in this affidavit is based on my personal knowledge of this investigation and information provided to me from San Diego Sheriff's Office ("SDSO") Sergeant William Uelen and United States Postal Inspection Service ("USPIS") SA Anthony Villareal.

4.     This affidavit is made in support of a complaint and arrest warrant against Raheleh ZIAEI (aka "Rachel Amin") and Sahaf Amin GHOLAMREZA (aka "Reza Amin") for violating Title 21, United States Code, Sections 841 (a)(1), (b)(1)(A)(vii) (Possession with intent to manufacture, distribute, or dispense, a controlled substance, namely, Opium).   This affidavit is intended only to set forth probable cause for the requested complaint.   It does not purport to set forth all of my knowledge in this matter.

## II   <u>PROBABLE CAUSE</u>

5.     On January 6, 2012, the Turkish National Police seized approximately 1.94 kilograms of opium gum packaged and ready for shipment at a DHL facility located at the Istanbul Ataturk International Airport, Turkey.   The opium was concealed in wooden picture frames with the intended recipient as Raheleh Ziaei, 11106 Avenida de los Lobos, San Diego, California 92127 (hereafter referred to as the "Los Lobos residence") with a contact number of (858)XXX-7469.

5

6.     On January 10, 2012, Intelligence Analyst Sensheer Ortiz sent a subpoena to AT&T requesting subscriber and toll records for (858)XXX-7469.   A subsequent response by AT&T revealed that (858)XXX-7469 was subscribed to by Raheleh Ziaei (ZIAEI) at the Los Lobos residence.

7.     In August 2012, NTF Team 2 members contacted the United States Postal Inspection Service (USPIS) and advised USPIS of the January 6, 2012, opium parcel seizure in Istanbul, Turkey.   Team 2 further advised that the opium laden parcel was addressed to ZIAEI at the Los Lobos residence.   The USPIS subsequently contacted the Rancho Bernardo Post Office to request that the post office advise investigators of any additional incoming parcels addressed to the Los Lobos residence.

8.     As requested, on October 25, 2012, the Rancho Bernardo Post Office forwarded an express mail parcel with tracking number 016350287 TR to USPIS SA Anthony Villareal.   SA Villareal examined the parcel and observed the parcel was being shipped from Aksaray, Turkey to "Reza Amin" at the Los Lobos residence. USBP Patrol Agent ("PA") Gregory Custenborder and his narcotic detection canine, Frida, subsequently conducted a narcotic detection "sniff" of the parcel and PA

6

Custenborder advised SA Villareal that Frida alerted to the odor of narcotics emanating from said parcel.

9.     On October 25, 2012, SA Villareal contacted USPS Customer Service Manager Eric Gilbert regarding parcel #016350287 TR.   Gilbert advised SA Villareal of the follow:

a.     On October 23, 2013, a man identifying himself as "Reza Amin" (GHOLAMREZA) approached the local mail carrier to ask about Express Mail Parcel #016350287 TR.   Rez Amin stated USPS.com reflected that the parcel had arrived in San Diego and asked if the mail carrier if she had the package.   The mail carrier told GHOLAMREZA that she did not have any parcels for him.

b.     On October 25, 2012, a man identifying himself as "Reza Amin" (GHOLAMREZA) entered the Rancho Bernardo Post Office asking about Express Mail Parcel #016350287 TR.   Reza Amin asked where the parcel was and specifically why he had not received it yet.   Reza Amin was advised that the USPS would monitor the location of the parcel and a supervisor would contact him once the parcel arrived.

c.     On October 25, 2012, a female identifying herself as "Rachel Amin" (ZIAEI) called the Rancho Bernardo Post Office and spoke with Gilbert to

inquire about Express Mail Parcel #016350287 TR.   Rachel Amin asked why the parcel had not been delivered to her husband, "Reza Amin" if the parcel showed it arrived in San Diego two days prior.   Gilbert advised Rachel Amin that there must have been an issue with the address label and the postal employees might be unable to retrieve the address information to forward to the correct address.

d.      On October 25, 2012, Rachel Amin (ZIAEI) called the Rancho Bernardo Post Office and spoke with Gilbert to inquire again about Express Mail Parcel #016350287 TR.   Rachel Amin asked why the online information reflected the parcel was being sent to Los Angeles, California.   Gilbert advised that the address label issue must be unresolvable, and that if the address information is correct, the parcel would be re-routed to San Diego.   Rachel Amin asked Gilbert if he could have the USPS in Los Angeles hold the parcel so she could drive there and pick it up.

10.      On October 27, 2012, SA Villareal spoke with USPS LAX Express Mail Unit employee Sam Booth.   Booth advised SA Villareal of the following:

a.      On October 26, 2012, at approximately 5:40 a.m., a male identifying himself as "Reza Amin" (GHOLAMREZA) and a female identifying herself as "Rachel Amin" (ZIAEI) went to the USPS Domestic Express Mail Unit, LAX ISC

Security asking about a pending parcel.   Reza and Rachel Amin stated they drove from San Diego after speaking with a postal service employee who told them they could pick up the parcel in Los Angeles.   Booth said he would research the parcel and call Reza and Rachel Amin back.

   b. Approximately one hour later, Rachel Amin (ZIAEI) called Booth asking about the parcel.   Booth advised her that he had still not located the parcel and that he would contact her when he had more information.

  11. On October 26, 2012, SA Villareal obtained a Federal search warrant for Express Mail Parcel #016350287 TR.   Upon opening the parcel, SA Villareal located two particle board frames measuring approximately 10″ x 14.″   Further inspection revealed that encased within each frame was a cellophane wrapped dark brown gummy substance. SA Villareal conducted a presumptive field test, which revealed the substance tested positive for opium.

  12. On October 31, 2012, SDSO Sgt. Uelen obtained an anticipatory California State search warrant No. E2012-376, signed by the Honorable California Superior Court Judge Lance Lewis authorizing search of the Los Lobos residence upon the successful controlled delivery of Express Mail Parcel #016350287 TR.

13.     On November 1, 2012, at approximately 10:05 a.m., SA Villareal, acting in an undercover capacity as a US Postal Carrier, knocked on the front door of the Los Lobos residence.   ZIAEI, who verbally identified herself as "Raheleh Ziaeli," answered the front door.   Upon seeing the package, ZIAEI responded "Oh, my package...thank you."   ZIAEI signed for the parcel and subsequently entered the Los Lobos residence.

14.     At approximately 10:22 a.m., members of DEA NTF Team 2 approached the front door of the Los Lobos residence.   Sgt. Uelen knocked on the door several times and announced in a loud clear voice, "POLICE, search warrant, demanding entry!"   Sgt. Uelen repeated this process two more times pausing between announcements, and did not get a response. After about twenty seconds had elapsed, Sgt. Uelen attempted to open the door and discovered the door was locked.   Moments before forcing entry, the door was unlocked by a 10 year old identified as K.S..   NTF members contacted K.S. and his 8 year old sister A.S. in the living room of the Los Lobos residence.   A 17 year old female identified as L.B. was located in an upstairs bedroom.   During a protective sweep of the Los Lobos residence, NTF members located ZIAEI outside the side garage door smoking a cigarette.

15.   A search of the Los Lobos residence revealed Express Mail Parcel #016350287 TR located in the garage, unopened, and leaning up against the wall. Agents also located an Apple iPhone on the kitchen table which contained pictures of the US Postal tracking page for Express Mail parcel ED016350287TR.

16.   A search of the master bedroom revealed a digital scale with residue similar to the opium gum found in the parcel as well as cellophane plastic wrap similar to the wrapping found on the opium shipped in the parcel from Istanbul, Turkey.

17.   Sgt. Uelen read ZIAEI her <u>Miranda</u> warnings from a Standard SDSO Notebook.   ZIAEI stated she understood her rights and agreed to speak with Sgt. Uelen.

18.   ZIAEI told TFO Uelen that she lived with her husband Sahaf Amin GHOLAMREZA and their three children at the Los Lobos residence where they pay approximately $2,100 in rent.   ZIAEI said that she was an unemployed hairdresser, and that her husband worked as a taxi cab driver.   ZIAEI stated that GHOLAMREZA was looking for other employment because he was not earning sufficient income driving a taxi.   When Sgt. Uelen asked ZIAEI about the package that had just been delivered, ZIAEI responded "I have nothing to do with this"

despite the fact that Sgt. Uelen had yet to mention that there was suspected opium in the package.

19.    ZIAEI stated she and her husband, GHOLAMREZA, accepted packages for a friend who lives in Los Angeles, California.    ZIAEI stated that the friend did not have a proper address in Los Angeles, so they accepted the package as a favor to a friend.    ZIAEI denied receiving any money for accepting the package.

20.    ZIAEI told Sgt. Uelen that she believed the friend owned a cabinet company and also sold cars.    ZIAEI said that their friend had told her the package she had received contained wood samples for his company.    When asked why she drove from San Diego to Los Angeles in an attempt to retrieve the Express Mail parcel, ZIAEI said they were just trying to do their friend a favor because it was that it was important to him.

21.    Sgt. Uelen asked ZIAEI about the digital scale found in her bedroom dresser, and ZIAEI said she had a medical marijuana card and that she uses the scale to weigh marijuana.    Sgt. Uelen advised ZIAEI the residue on the scale was not from marijuana, and ZIAEI admitted to smoking opium approximately twice per week.    ZIAEI stated she purchases opium from friend for $35 per gram.

Sgt. Uelen asked ZIAEI for the names of her friends her sell opium and ZIAEI would not provide any names.

22.   Sgt. Uelen asked ZIAEI about the cellophane plastic wrap found next to the digital scale, ZIAEI told TFO Uelen that she uses it for wrapping items up in her bedroom.   During the course of the search, investigators were unable to locate anything in GHOLAMREZA and ZIAEI's bedroom that had been wrapped in cellophane.

23.   Sgt. Uelen asked ZIAEI about the Express Mail parcel ED016350287TR and ZIAEI said it had been sent by a person she knows as "Jafar Jafari."   ZIAEI advised that Jafar Jafari was not a real name.

24.   ZIAEI stated she had received two additional packages from Turkey for her Los Angeles friend.   ZIAEI said that on March 7, 2012, she received Express Mail parcel ED018467120TR and gave it to her friend.   ZIAEI stated that he last package she received arrived approximately two prior in August/September 2012. ZIAEI said both these packages has been sent by a person named "Hamidreza Ghanbari."   ZIAEI said Ghanbari lives in Turkey, but that she does not know any more about him.

## III   CONCLUSION

Based on the foregoing facts, along with my training and experience, I believe that there is probable cause to believe that Raheleh ZIAEI and Sahaf Amin GHOLAMREZA violated Title 21 United States Code, Sections 841 (a)(1), (b)(1)(A) (vii) (to manufacture, distribute, and dispense, and possess with intent to manufacture, distribute, and dispense, a controlled substance - Opium).

PAUL GELLES, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this __23__ day of January 2014.

WILLIAM V. GALLO
United States Magistrate Judge